RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  1/18/12
     90B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| PAUL C. JONES | DOCKET NO. 11-CV-861; SEC. P |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CATAHOULA PARISH, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Plaintiff Paul C. Jones, proceeding pro se and in forma pauperis, filed the instant complaint pursuant to 42 U.S.C. §1983. Plaintiff is a pre-trial detainee presently incarcerated at the East Baton Rouge Parish Prison; however, he complains of constitutional violations while incarcerated at the Catahoula Correctional Center (CCC) in Harrisonburg, Louisiana. He names as defendants Catahoula Parish, Catahoula Sheriff Department, Catahoula Sheriff's office, CCC, Sheriff James G. Kelly, Warden Book, Asst. Warden Ramsay, Major K. Smith, Captain Little, Cpl. Robinson, Sgt. Kerry, and Misty Colwart, LPN. Plaintiff seeks compensatory, punitive, and incidental damages.

### Factual Background

Plaintiff alleges that he was transferred back and forth between E.B.R. Parish Prison and CCC many times between June 16, 2010 and March 17, 2011. He presents the following complaints against CCC defendants:

- Plaintiff first complains that on July 22, 2010, Warden Book issued a rule that inmates would be given ten days to get rid of any items they had in their possession over and above the amount allowed at the prison. Plaintiff admittedly possessed

twenty.

- On October 23, 2010, Plaintiff was not at the door when it was time for breakfast, so he was not allowed to eat. He complains that Sgt. Kerry and Sgt. McNeely implemented a policy whereby an inmate who is not at the exit door when the door opens for mealtime is not allowed to eat.

- On October 24, 2010, Plaintiff submitted a sick call request form to Nurse Misty Cowart for back pain, insomnia, second had smoke in the dorm, and medication not being transferred with him from E.B.R. Parish Prison. Nurse Cowart did not respond to the request.

- On June 16, 2010, Plaintiff inquired about psychiatric services, optometry services, and the transfer of medication from E.B.R. Parish Prison. Nurse Colwart, in the presence of Sgt. Kato, told Plaintiff that CCC did not offer psychiatric or optometry services. In the month of June, Plaintiff did not have contact solution for his contacts. The lack of psychiatric care and contact solution caused Plaintiff to suffer from blurred vision, lack of sleep and weight loss.

- Plaintiff alleges that he was transferred to E.B.R. Parish Prison from CCC on July 11, 2010, July 19, 2010, July 26, 2010, August 6, 2010, October 25, 2010, November 22, 2010, December 2, 2010, February 8, 2011, and February 23, 2011. His hygiene products and certain article of clothing were not among the items of personal property that were transferred with him. His papers were also destroyed by water damage.

- Plaintiff's blanket, sheet, and mattress were taken from him on December 28, 2010 because Plaintiff had not sent his linens out to be cleaned. Plaintiff states that he was unaware of the policy requiring that linens be washed once per week.

- Plaintiff complains that on February 3, 2011, he discovered that CCC has been stamping his outgoing mail with a Louisiana State Penitentiary stamp, which deceived correspondents of Plaintiff's location.

- He complains that he is required to pay for copies of documents.

- Plaintiff complains that correctional officers do not wear name tags and refuse to provide their name when asked.

- Plaintiff complains that there is an insufficient number of

benches at CCC for inmates to sit on when watching television; there are not enough tables for inmates to use for writing; the bathroom shower walls are covered in mildew and dripping rust; there is insufficient water pressure in the sinks; there was a problem with ants in the housing area; officers would not intervene in fights between inmates; the air conditioner would run intermittently; clothes in the commissary are too expensive; cigarettes and lighters are sold in the commissary; no outdoor smoke breaks are provided.

- He complains that inmates have to purchase "poboy trays" because meals served in the dining area do not consist of meat or food from the food groups and contain small portions. Plaintiff alleges that this resulted in him becoming frail;

- Caucasian officers overlook Caucasian inmates smoking in the dorm and getting tattoos, but target African Americans who do the same.

- Inmates who cause trouble are taken out a back exit at night and killed, and Plaintiff has smelled the gunpowder.

- Chaplain Hatten insisted that Plaintiff remove his clothing in order to be rated on his physical appearance. Hatten provides inmates with contraband in exchange for oral sexual favors. Plaintiff saw Hatten on or about October 2010.

- Plaintiff alleges that he was denied access to the courts. He states that he requested documents from the law library at CCC in June of 2010 in order to challenge the legality of his incarceration, but he was unable to obtain the necessary documents.

- Plaintiff also complains about the lawfulness of his arrest in Baton Rouge, and claims that he was denied a speedy trial.

- Plaintiff has alleged that he notified the following individuals of the conditions at CCC, but received no relief: CCC Warden Pat Book, EBR parish Sheriff Sid Gautreaux, and EBR Parish Prison Warden Dennis Grimes.

- Plaintiff alleges that Sheriff James Kelly, Warden Book, and Catahoula Parish "failed to maintain care, control and custody of facility and inmates; failed to supervise employees; failed to institute policies and procedures" that would have prevented the alleged constitutional violations. He claims that Kelly and Book are principals to conspiracy.

- Plaintiff alleges that Warden Ramsay, Major Smith and Captain Little are supervisors who failed to supervise their employees.

- Plaintiff states that many improvements at CCC were made including: November 2010 - showers painted; 2011 - sink faucets replaced, infirmary call out procedure implemented, air conditioner was repaired, basketball goals were replaced or repaired, new officers were hired, chemical agent was being sprayed less.

Plaintiff was ordered to state what each defendant did to violate Plaintiff's constitutional rights and to state what, if any, injury he suffered as a result of each alleged violation.

## Law and Analysis

### 1. Compensatory Damages

Title 42 U.S.C. § 1997e(e) bars a prisoner from recovering damages for emotional injuries unless the prisoner also suffered a physical injury. See Geiger v. Jowers, 404 F.3d 371, 375 (5th Cir.2005)(holding that Section 1997e(e) applies to all civil actions in which a prisoner alleges a constitutional violation). The statute provides as follows: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In interpreting the statute, the Fifth Circuit has said that the physical injury must be more than de minimis, but need not be serious. Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir.1997) (holding that the Eighth Amendment standard applies when determining whether a prisoner has sustained a physical injury

4

which would support a claim for mental or emotional suffering).

Plaintiff does not allege that he suffered any physical injuries as a result of the defendants' actions. Therefore, he is barred by Section 1997e(e) from recovering *compensatory damages*.

**2. First Amendment**

   *a. Correspondence*

Plaintiff complains that inmates are limited to possessing twenty letters. He presumably raises this claim pursuant to the First Amendment to the United States Constitution. Prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. See Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 128 (1977); Procunier v. Martinez, 416 U.S. 396, 404-05 (1974); Cruz v. Beto, 405 U.S. 319, 321 (1972). In order to ensure prison officials are afforded appropriate deference in their decision-making, prison regulations which allegedly infringe constitutional rights are judged under a reasonableness test. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).

Several factors are relevant when determining whether a prison regulation is reasonable. See Turner v. Safley, 482 U.S. 78, 89-90 (1987); Adkins v. Kaspar, 393 F.3d 559, 564 (5th Cir. 2004), cert. denied, 545 U.S. 1104, 125 S.Ct. 2549 (2005). The court must

consider: (1) whether the regulation has a logical connection to a legitimate governmental interest; (2) whether the prisoners have alternate means of exercising their constitutional rights; (3) the impact the requested accommodation of the prisoner's asserted rights would have on other inmates, prison personnel, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation that accommodate both the plaintiff and the administrative needs of the prison. See Adkins, 393 F.3d at 564.

The Fifth Circuit, and courts therein, have held that a limitation on the number of letters, books, publications, and other papers is reasonably related to a legitimate and significatn peonological interest of avoiding fire hazards. See Leachman v. Thomas, 229 F.3d 1148 (5th Cir. 2000)(jail's rule that inmates an only have three publications is related to significant penological interest of avoiding fire hazards.); Cruz v. Hauck, 515 F.2d 322, 333 (5th Cir. 1975)(holding that county jail's limitation on number of books kept by prisoners was reasonable in light of duty to maintain security and protect against the dangers of fire); Tyson v. LeBlanc, 2010 WL 5375955 (E.D.La. Nov 19, 2010)(*aff'd by* 431 Fed.Appx. 371 (5th Cir. 2011)(restricting number of books and papers prevents inmates from using to start a fire or stop up a toilet). Plaintiff's claim regarding the twenty letter limit should be dismissed.

*b.   Access to Courts*

Plaintiff alleges that he was denied access to the courts. He states that he requested certain documents from the CCC law library in June of 2010, which were necessary to challenge the legality of his incarceration. He was unable to obtain the documents. In order to state a claim that his constitutional right of access to the courts was violated, Plaintiff must demonstrate that his position as a litigant was actually prejudiced. See Lewis v. Casey, 518 U.S. 343, 356 (1996). Plaintiff makes only a conclusory allegation that the absence of some unidentified documents rendered him unable to challenge the legality of his incarceration. He does not state what document he needed from the law library or how that document was necessary to challenge the legality of his incarceration.

Moreover, a review of federal lawsuits filed by Plaintiff reveals that Plaintiff actually *was* able to challenge his incarceration in June 2010. He drafted and submitted to the E.B.R. Parish Clerk of Court a Motion for Preliminary Examination on June 14, 2010. [Jones v. Daniel, et al., 3:10-cv-719, Doc. #1, p.6] On June 15, 2010, Plaintiff was brought to court in East Baton Rouge Parish, where he advised the judge that he wished to proceed pro se in his criminal matter rather than accept the appointment of the public defender's office. [Id.] Plaintiff has also filed a total

of six federal lawsuits from September 2010 to September 2011[1]. He fails to allege, and the record does not reflect, that he was unable to file a challenge to his incarceration due any inadequacy in the CCC law library.

### 3. Episodic Act or Omission

"The appropriate standard to apply in analyzing constitutional challenges brought by pretrial detainees depends on whether the alleged unconstitutional conduct is a 'condition of confinement' or 'episodic act or omission.'" Brown v. Strain, 663 F.3d 245 (5th Cir. 2011)(citing Tamez v. Manthey, 589 F.3d 764, 769 (5th Cir.2009) (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997)(en banc)). If the complained-of harm is a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. See Hare v. City of Corinth, 74 F.3d 633, 645 (5th Cir. 1996). Plaintiff's complaints against defendants Kerry, McNeely, and Nurse Cowart regarding missing breakfast on October 23, 2010, having his linens removed on December 28, 2010, requesting a sick call on October 24, 2010, and inquiring about psychiatric services and optometry service on June 26, 2010, are episodic acts or omissions.

The "deliberate indifference" standard is applied in episodic act or omission cases. Under that standard, Plaintiff must allege

---

[1] 3:2010-cv-00634; 3:2010-cv-00719; 3:2011-cv-00071; 1:2011-cv-00861; 3:2011-cv-00553; 3:2011-cv-00270

that the defendants "acted with subjective deliberate indifference" to Plaintiff's rights. See Tamez v. Manthey, 589 F.3d at 770. Plaintiff has not presented any allegations of deliberate indifference by these defendants. He admits that he was in violation of rules regarding reporting to meals and laundering bedding. He does not allege that the nurse knew of and disregarded a serious or excessive risk to Plaintiff's health or safety in failing to provide the treatment that Plaintiff concluded was necessary.

### 4. Conditions of Confinement

Plaintiff also complains of conditions of confinement, including insufficient/limited seating for watching television, inadequate number of tables for writing, mildew and rust in showers, problems with the sink faucets, ants in the housing area, fights between inmates, air conditioner out of order at times, expensive commissary, lack of outdoor smoking breaks, insufficient or inadequate food portions, inmates being taken out of the back exit and murdered in the night, and inmates sprayed with chemical agent if caught smoking indoors.

Plaintiff does not allege that he was ever subjected to any fights or attacks by inmates or that he was ever sprayed with chemical agent. As for the other conditions, a constitutional violation exists only if the condition of confinement is not reasonably related to a legitimate, non-punitive governmental

objective. See Hare, 74 F.3d at 640. The alleged deprivation must be "sufficiently serious," which means that "the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 847. To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities ...'" Alexander v. Tippah County, 351 F .3d 626, 630 (5th Cir.2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.1995)).

a.  Food

The Constitution mandates that detainees and inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Green v. Ferrell, 801 F.2d 765, 770 (5th Cir.1986)(quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996)(per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). Whether the deprivation of food falls below the constitutional threshold depends on the amount and duration of the deprivation. See Talib v. Gilley, 138 F.3d 211, 214 n. 3 (5th Cir. 1998)(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotations omitted). In fact, even on a regular, permanent basis, two meals a day may be adequate. See Green, 801 F.2d at 770-71.

In Talib, *infra*, the Fifth Circuit expressed serious doubts

that the prisoner-plaintiff, who "missed about fifty meals in five months and lost about fifteen pounds," met that threshold. Talib, 138 F.3d at 214 n.3. The instant complaint does not even rise to the level mentioned in Talib. Plaintiff does not allege that he was denied anything close to the "minimal measure of life's necessities..." during his period of incarceration at CCC. Plaintiff has offered only a conclusory allegation that the OPCC diet was calorically inadequate and/or lacking in nutrition.

    b.   Other conditions of confinement

Plaintiff's complaints about inadequate seating for watching television, an insufficient number of tables for writing, mildew and rust in shower, undesirable water pressure, intermittent air conditioning, ants in housing area, expensive commissary, and insufficient outdoor smoking breaks also fail to state a claim for which relief can be granted. To prevail on a 42 U.S.C. §1983 claim regarding the conditions of his confinement, Plaintiff must establish that the conditions amounted to punishment and were not reasonably related to a legitimate governmental purpose. See Bell v. Wolfish, 441 U.S. 520, 535, 538 (1979).

First, Plaintiff has not suggested that these conditions were imposed for the purpose of punishment. They are trivial inconveniences. "The Constitution is not concerned with a *de minimis* level of imposition on pretrial detainees." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004), *aff'd,* 177 Fed. Appx.

377 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055 (2006)(citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)); see also Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir.1989) (holding that the Constitution does not protect against conditions of confinement "which cause mere discomfort or inconvenience"). "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." Lee v. Hennigan, 98 Fed. Appx. 286, 288 (5th Cir. 2004)(citing Bell, 441 U.S. at 537, 539).

5. **Medical Care**

Plaintiff complains that CCC did not offer psychiatric care or the services of an optician. He claims that he received psychiatric treatment and contact solution at EBR Parish Correctional, but neither of those were available to him while temporarily held at CCC. He claims that the lack of contacts and solution caused him to experience blurred vision, and the lack of psychiatric care caused him to experience some weight loss and lack of sleep.

A pretrial detainee's right to medical care is violated if "an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries." Mace v. City of Palestine, 333 F.3d 621, 625 (5th Cir.2003). Plaintiff has not alleged that the defendants acted with deliberate indifference to a serious medical need in this case, nor has he presented

allegations that any defendant refused to offer psychiatric services or optometry services at CCC out of some subjective intent to cause harm to Plaintiff.

### 6. Chaplain Hatten

Plaintiff alleges that Chaplain Hatten provides inmates with contraband in exchange for oral sex. He claims that in October 2010, Plaintiff was instructed by Chaplain Hatten to remove his clothing in order to be rated on his physical appearance. Plaintiff fails to state a claim for which relief can be granted. He does not claim that he actually complied with Hatten's instruction to remove his clothing. He does not claim that he was forced to remove his clothing or that he was punished for refusing to remove his clothing. Verbal harassment or threats do not state a cognizable claim under Section 1983. verbal threats did not state a constitutional claim. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983).

### 7. Lawfulness of Arrest in E. Baton Rouge Parish

Plaintiff challenges the lawfulness of his arrest in East Baton Rouge Parish, by officers in that area. The venue statute 28 U.S.C. §1391(b) governs venue in a civil rights case. Such a case must be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred, ..., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Therefore, Plaintiff's claims regarding his arrest and/or detention in E. Baton Rouge Parish should be brought in the District Court for the Middle District of Louisiana.

## 7. Costs for copies and commissary

Plaintiff complains that the commissary items are expensive and that he should not have to pay to make copies of documents. There is no constitutional right to a commissary or to low prices at a commissary. Numerous courts have held that such allegations fail to state a claim of violation of constitutional rights cognizable under Section 1983. See e.g., Sandin v. Conner, 515 U.S. 472, 478 (1995); Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000), McCall v. Keefe Supply Co., 71 Fed. Appx. 779, 2003 WL 21716435, at *1 (10th Cir. 2003); Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996); French v. Butterworth, 614 F.2d 23, 25 (1st Cir. 1980); Byrd v. L.C.S. Corr. Servs., Inc., No. 07-0029, 2007 WL 2156583, at *10 (W.D.La. Apr. 27, 2007).

Likewise, courts have recognized that there is no constitutional right to free copying services in prison. Prisoners do not have a right to free photocopies for use in lawsuits. See Kelly v. York County Prison, 325 Fed.Appx. 144, 145, 2009 WL 1111535, 1 (3rd Cir. 2009), citing Johnson v. Moore, 948 F.2d 517,

521 (9th Cir. 1991) and Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980).

8.  **Lost Personal Property**

Plaintiff complains that because he was transferred back and forth between CCC and EBR Parish Correctional, some of his personal property was lost or destroyed. In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, negligently deprives a prisoner of his property, there is no due process violation if the state provides an adequate post-deprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to intentional deprivations of property. In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate the Due Process Clause at all.

It is of no consequence whether Plaintiff is alleging that he was deprived of his property through negligence or an intentional act, because "in neither instance does he state a valid § 1983 action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). If plaintiff is claiming negligence, his claim is barred by Daniels. If he is claiming intentional conduct, the claim is barred by Hudson, in that Louisiana law clearly provides him with an adequate post-deprivation remedy, i.e. a tort

suit brought in state court. See Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); Bennett v. Louisiana Department of Public Safety and Corrections, 61 Fed. App'x 919 (5th Cir. 2003); Arnold v. Inmate Accounts, 48 Fed. App'x 105 (5th Cir. 2002).

9. **Supervisors**

Plaintiff complains that Kelly, Book, and Catahoula Parish are liable as supervisors of the other defendants and for failing to properly train them. "Vicarious liability does not apply to §1983 claims." Pierce v. Texas Dept. of Crim. Justice, Inst. Div., 37 F.3d 1146, 1150 (5th Cir. 1994), cert. denied, 514 U.S. 1107 (1995). Thus, supervisors are not automatically liable for the acts of their subordinates. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations or (ii) they implement unconstitutional policies that causally result in Plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. denied, 508 U.S. 951 (1993).

Similarly, when a plaintiff alleges failure to train, he must show: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference to plaintiff's constitutional rights. Cousin v. Small, 325 F.3d 627, 637 (5th Cir.), cert. denied, 540 U.S. 826,

124 S.Ct. 181 (2003); Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir.2001).

In the instant case, Plaintiff has failed to state a claim that his constitutional rights were violated. Accordingly, he cannot prove one or more of the essential elements of a supervisory liability or a failure to supervise/train claim.

### *Conclusion*

For all of the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED with prejudice** in accordance with the provisions of 28 U.S.C. §1915(e)(2)(b).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir.

**1996).**

Thus done and signed in Alexandria, Louisiana, this 18th day of January, 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE